IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THERESA A. LEVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-258 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff Theresa Levins brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

**I.   PROCEDURAL HISTORY**

Ms. Levins filed her application for Disability Insurance Benefits on July 24, 2006, alleging a disability onset date of December 31, 2001. (Tr. at 13, 270-75.)[2] After her application

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #5].

was denied initially and upon reconsideration, Ms. Levins requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) After the hearing, the ALJ issued a partially favorable decision finding Ms. Levins disabled from January 1, 2003, her amended alleged onset date, until March 31, 2004. (Tr. at 146.) However, he determined that, as of April 1, 2004, Ms. Levins' medical improvement allowed her to return to work and she was no longer disabled within the meaning of the Act (Tr. at 147-52.)

Ms. Levins appealed this ruling, and, on February 24, 2010, the Appeals Council remanded her claim for a new hearing. (Tr. at 155-58.) The ALJ ultimately found that Ms. Levins was not disabled at any time during this period. (Tr. at 25-26.) On January 31, 2013, the Appeals Council denied Ms. Levins' request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). "[T]he scope of [the court's] review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted). The issue before this Court "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

**III.     THE ALJ'S DECISION**

The ALJ followed the well-established five-step process to evaluate this disability claim. See e.g., *Hancock*, 667 F.3d at 472.  The ALJ found at step one that Ms. Levins had not engaged in "substantial gainful activity" since her alleged onset date.  At step two, the ALJ further determined that Ms. Levins suffered from the following severe impairments:  "degenerative joint disease of the left hip, status post total left hip replacement; degenerative disc disease of the lumbar spine; degenerative joint disease of the bilateral knees, right greater than left; and a history of fibromyalgia."  (Tr. at 16.)  The ALJ found at step three that none of these impairments met or equaled a disability listing.  Accordingly, the ALJ assessed Ms. Levins' RFC and determined that she could perform light work with additional postural and environmental limitations, including, in pertinent part, the option to alternate sitting and standing at will.  The ALJ also found that Ms. Levins' excessive sleepiness prevented her from performing routine, repetitive tasks, and that she would instead require a job "where she could move around, sit at various intervals, and have a variety of functions."  (Tr. at 21.)  Based on this RFC and the testimony of an impartial vocational expert, the ALJ found at step four of the analysis that Ms. Levins could return to her past relevant work as a legal secretary.  Alternatively, the ALJ found at step five that Ms. Levins could perform other jobs that exist in significant numbers in the national economy and therefore was not disabled. (Tr. at 24-25.)

**IV.     CONTENTIONS**

Ms. Levins contends that the ALJ committed two errors that require reversal.  First, she asserts that the ALJ erred by failing to evaluate and assign weight to medical opinions stated by the Medical Expert who testified at the May 28, 2008, disability hearing.  Second, she contends

that the ALJ "erred by failing to resolve conflicts in the decision regarding the limiting effects of [Ms. Levins'] sleep apnea." [Doc. #8 at 2.]

V.  **DISCUSSION**

   A.   Medical Expert Testimony

A medical expert, Dr. Hugh Savage, testified at Ms. Levins' first administrative hearing. (Tr. at 101-19.) No reference to Dr. Savage or his opinions appears in the ALJ's decision at issue here. Ms. Levins contends that this omission is reversible error because Dr. Savage's medical opinions conflict with the ALJ's RFC findings. [Doc. #8 at 5.] Specifically, she argues that Dr. Savage's opinion that her ability to stand and walk "would fluctuate between two and six hours based on how her symptoms are" (Tr. at 111) conflicts with the ALJ's finding that she can perform light work with "the option of alternating between sitting and standing at will." (Tr. at 21.) Ms. Levins also challenges the ALJ's failure to include any mental limitations in her RFC despite Dr. Savage's opinion that her "tenuous psychological situation" would interfere with her ability to meet work-pace requirements. (Tr. at 21, 114-16.) Upon closer examination, neither of these opinions conflict with the RFC or the requirements of the jobs identified at steps four and five of the sequential analysis.

Both in crafting Ms. Levins' RFC and in conveying this RFC to the vocational expert at her hearing, the ALJ described an individual who "could sit, stand, and walk six hours in an eight-hour day but would require the option to alternate between sitting and standing at will." (Tr. at 21, 63.) Obviously, this description does not require such an individual to sit for six hours, stand for six hours, and walk for six hours in the course of each eight-hour day as Ms. Levins contends. The phrase "up to" is implied, and demanded, by common sense and simple addition. Moreover, the ALJ's decision indicates that these postures are to be alternated at the

will of the individual. Thus, the RFC, and the corresponding hypothetical question to the vocational expert, clearly encompass Dr. Savage's opinion that Ms. Levins can stand and walk between two and six hours on a given workday. Any error in failing to discuss this aspect of Dr. Savage's opinion was harmless.

When asked by the ALJ in the first hearing if Ms. Levins had any non-exertional limitations "fairly attributable to . . . impairments of a mental nature," Dr. Savage initially replied that the record did support Ms. Levins' testimony that she became upset easily. (Tr. at 114.) At that point, the following exchange occurred:

> [ALJ]: Okay. So, you would not add any non-exertional limitations to the ones you've already - - to the physical and other limitations you've already testified to?
>
> [Dr. Savage]: I think that time stresses would have to be avoided to a degree; that something has to be done - -
>
> [ALJ]: So like trying to do piece work or high speed line work would be precluded?
>
> [Dr. Savage]: And that if someone were over her saying, "No, more, more, more." Or "You're not going fast enough." I think that based on her tenuous psychological situation, and with the depression that seems to be there, or is being treated, that that [is] not feasible. That needs to be included in the non-exertional limitations.

(Tr. at 114-15.) Dr. Savage then went on to explain that Ms. Levins nevertheless should be able to maintain the concentration, persistence, and pace to sustain work activities without an unreasonable number of interruptions. (Tr. at 115-16.)

No other clinician found that Ms. Levins required a job free from pace requirements or that she had any significant degree of mental limitation or impairment. (*Compare* Tr. at 18-19, 567-70, 575-87.) Based on this fact alone, substantial evidence supports the ALJ's decision to implicitly discount Dr. Savage's opinion to the contrary. Moreover, none of the clerical jobs identified by the vocational expert at steps four and five of the sequential analysis involve pace

5

requirements of any kind.  *See* DOT 201.362-010, 1991 WL 671667; DOT 239.567-010, 1991 WL 672232; DOT 195.367-030, 1991 WL 671600; DOT 237.367-018, 1991 WL 672187.  Accordingly, any failure to include the additional restriction opined by Dr. Savage resulted in, at most, harmless error.

  B.  Sleep Apnea

Ms. Levins also alleges two related errors related to her sleep apnea.  First, she contends that the ALJ erred in failing to classify her sleep apnea as a severe impairment at step two of the sequential analysis.

> [A]n ALJ's failure to characterize a claimant's condition as severe at step two of the sequential evaluation process does not always warrant remand, even when erroneous.  Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010).  If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps.  *Id.*  However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC.  *See* 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986).  If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant.  *See Thomas v. Commissioner, Soc. Sec. Admin.*, No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); *Kenney v. Astrue*, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

*Rivera v. Astrue*, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. August 22, 2013).  In the present case, the ALJ specifically discussed Ms. Levins' excessive daytime sleepiness and the limitations resulting from it in her RFC assessment; those limitations are supported by substantial evidence.  Thus, any error in failing to classify her sleep apnea as "severe" at step two is harmless.

6

Ms. Levins also contends that her RFC conflicts with the ALJ's findings at steps four and five of the sequential analysis. In particular, she argues that an inability to perform routine, repetitive tasks would render her unable to perform (1) the unskilled jobs identified at step five and (2) the more mentally demanding skilled job of legal secretary identified at step four. [Doc. #8 at 8-9.] In making this challenge, she erroneously equates "routine and repetitive tasks" with "unskilled work activity." In fact, this Court has held that routine, repetitive work is a narrower category than unskilled work. *McClendon v. Astrue*, No. 1:10CV411, 2012 WL 13525, at *7 (M.D.N.C. Jan. 4, 2012).

Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85–15, Titles II and XVI: Capability To Do Other Work–The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments ("SSR 85–15"). Often, but not always, unskilled jobs involve routine, repetitive tasks, such as assembly line work. The RFC in the case at hand rules out only this subcategory of unskilled work, noting that "due to hypersomnolence," Ms. Levins needs "a job where she [can] move around, sit at various intervals, and have a variety of functions." (Tr. at 21.) Clearly, the ALJ's goal in including such a restriction was to rule out monotonous tasks that could exacerbate Ms. Levins' sleepiness, rather than to document any inability to perform more mentally demanding work.

Accordingly, the Court finds no error.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability be **AFFIRMED**, that plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #7] be **DENIED**, that defendant's Motion for Judgment on the Pleadings [Doc. #12] be **GRANTED**, and that this action be **DISMISSED** with prejudice. A judgment will be entered contemporaneously with this Opinion and Order.

This, the 18th day of July, 2014.

                                                                     /s/  
                                                UNITED STATES DISTRICT JUDGE